CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

June 30, 2025

LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
     DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ROBERT BARNES, | ) |
|     Plaintiff, | ) Civil Action No. 7:23cv00564 |
| | ) |
| v. | ) MEMORANDUM OPINION |
| | ) |
| BENNY MULLINS, et al., | ) By: Robert S. Ballou |
|     Defendants. | ) United States District Judge |

Robert Barnes, a Virginia inmate acting *pro se*, alleges in this action that he was transferred from Wallens Ridge State Prison to Red Onion State Prison in retaliation for complaints that he filed against Dr. Mullins, a physician at Wallens Ridge. In addition to Mullins, Barnes has sued Joseph Ely, a Unit Manager at Wallens Ridge, and Jonathan Carico, the Wallens Ridge Chief of Housing and Programs. Mullins filed a Motion to Dismiss, and Ely and Carico filed a separate Motion to Dismiss. Upon consideration of the pleadings and the law, the Motions to Dismiss will be granted in part and denied in part.

## I. Factual Background

In considering a Motion to Dismiss, the court must accept as true all well-pleaded facts in the complaint and draw all reasonable inferences in the plaintiff's favor. *Langford v. Joyner*, 62 F.4th 122, 124 (4th Cir. 2023). In the light most favorable to the plaintiff, this suit is based upon the following events as set forth in Barnes' Second Amended Complaint. Dkt. No. 50. The court has also considered the attachments to plaintiff's Second Amended Complaint, which are integral to and explicitly relied on in the complaint. *Zak v. Chelsea Therapeutics Int'l Ltd.*, 780 F.3d 597, 606–07 (4th Cir. 2015).

Barnes received medical care from Dr. Mullins at Wallens Ridge beginning in 2018. In or around November 2019 and sometime in the middle of 2020, plaintiff filed complaints against

Mullins with the Virginia Department of Health Professions (DHP) and the Office of the State Inspector General (OIG).

On August 3, 2020, Barnes visited Mullins for back pain. Barnes complained to Mullins that his medications were ineffective, and he asked for additional treatment, but Mullins refused. Plaintiff told Mullins that he would file complaints with DHP and OIG stating that Mullins was mistreating him. Barnes also stated that he would file an informal complaint with the prison. Mullins responded that he would speak with the Assistant Warden about transferring plaintiff.

Barnes filed an informal complaint against Mullins on August 5, 2020, stating that he was mistreated by Mullins and that he would file a civil action against Mullins and his supervisors. On August 6, 2020, Mullins noted in plaintiff's medical file, "I have offered this patient everything that is available for back pain, including physical therapy when it becomes available. He has harassed me with letters to the Board of Medicine and the Inspector General. For all concerned, transfer is needed."

Mullins met with plaintiff on August 26, 2020. Mullins told Barnes that he was working on transferring him to Red Onion. Mullins recounted plaintiff's previous complaints and the recent informal complaint threatening to sue him. Mullins stated that it was time for plaintiff to be someone else's problem. Barnes told Mullins that he was not allowed to retaliate against him in response to his complaints. Mullins noted in plaintiff's medical file that "Transfer is in works."

Barnes met with Mullins again on April 28, 2021, regarding back pain. Mullins told Barnes he did not understand why plaintiff had not been transferred. Mullins stated he would talk with the Assistant Warden about the issue. On August 12, 2021, plaintiff met with Mullins about occasional pain in his right buttock when walking. Mullins stated again that he would

2

speak with an administrator about initiating plaintiff's transfer to Red Onion. Barnes asked Mullins to hold off on having him transferred until after his annual review in September 2021 because if Barnes was at Wallens Ridge during the review, his security-level classification would be reduced and he could be transferred to a Security Level 4 prison. On the other hand, if transferred prior to his annual review, then plaintiff's classification would not be reduced and he would have to stay at Red Onion for at least a year before being eligible for a Level 4 prison. Mullins stated he would not wait and that plaintiff would be transferred to Red Onion as soon as possible.

      Mullins also told plaintiff that he would be placed in segregation for fourteen days upon his arrival at Red Onion because Red Onion requires prisoners be quarantined to ensure they are not infected with COVID-19. Mullins knew that plaintiff suffered with visual and auditory hallucinations when housed in segregation. Mullins told plaintiff to seek treatment if this happens and apologized that "things have to be this way."

      The following week, Ely told plaintiff that "We've been told to transfer you because you've been harassing Dr. Mullins." Barnes said that he was not harassing Mullins and that Mullins was retaliating against him in response to plaintiff's complaints. Ely told Barnes that it did not matter because once an employee alleges that an inmate is harassing him, prison officials must take action to separate them. Because Mullins was the only physician employed at Wallens Ridge, there is no other way to separate plaintiff from Mullins. Ely indicated that Mullins is very irritated by plaintiff's complaints and grievances and told plaintiff that he "should not have written those letters." In the same week, Barnes complained to Carico about the situation. Carico replied that he knew about the issue and stated that plaintiff had to be transferred because of Mullins' allegations that plaintiff was harassing him. Carico told plaintiff that if he agreed to

3

stop filing complaints against Mullins he would try to convince Mullins to drop the issue. Plaintiff agreed to stop filing complaints.

On August 18, 2021, Ely scheduled plaintiff to appear before the Institutional Classification Authority (ICA) in preparation to transfer Barnes to Red Onion. However, Ely failed to notify plaintiff of the hearing, so plaintiff did not appear. Ely conducted the hearing on August 20, 2021, and recommended that Barnes be transferred to Red Onion. His rationale for the recommendation was "Administrative transfer to Red Onion. Agreed swap between both administrations." Carico reviewed and approved the recommendation on August 23. The proposed transfer was finalized by the VDOC's Central Classification Services on August 25, 2021. The Hearing Report did not include plaintiff's complaints that his proposed transfer to Red Onion was retaliatory. Barnes was transferred to Red Onion on September 1, 2021.

Upon arriving at Red Onion, Barnes was placed in the Restrictive Housing Unit for fourteen days to ensure he did not have COVID-19. While in restrictive housing, plaintiff experienced daily hallucinations and he continued experiencing them after being placed in the general population. Once in general population, Barnes was bullied by other inmates because of his hallucinations. Plaintiff sought mental health treatment because the bullying caused him anxiety.

On September 29, 2021, plaintiff submitted a grievance challenging his transfer to Red Onion. He alleged that he was transferred in retaliation for his complaints and grievances against Mullins. Barnes asked for Wallens Ridge officials to ask Red Onion officials to give plaintiff an interim review to transfer him from Red Onion. On October 26, 2021, the Wallens Ridge Warden reviewed the grievance and deemed it to be unfounded. He noted that an ICA hearing

4

was held and the transfer was approved, finding no violation of policy. Plaintiff's appeal to the Regional Administrator was denied.

Also on September 29, plaintiff had an ICA Committee hearing at Red Onion to determine his security classification. Plaintiff asked that his security level be reduced and for a transfer to a Security Level 4 prison due to his retaliatory transfer from Wallens Ridge. The Committee agreed, and at the conclusion of the hearing, Counsel Jason Shephard recommended that plaintiff's classification be reduced and that plaintiff should be transferred to a Security Level 4 prison. This recommendation was approved on October 4, 2021. However, the recommendation was denied on October 12, 2021, with a notation that read, "Transfer denied. Inmate arrived at Red Onion 9-1-2021. Reduction in Security Level is not appropriate at this time. Inmate needs to establish a longer period of stable adjustment." Plaintiff's classification was increased again to Level 5. Plaintiff submitted a grievance on October 15, 2021, to challenge his Security Level 5 classification, but the grievance was denied as unfounded.

Barnes was housed at Red Onion until May 24, 2023, when he was transferred to River North Correctional Center, a Level 4 facility.

## II. CLAIMS AND DEFENSES

Barnes raises the following claims:

1. Mullins violated plaintiff's First Amendment rights when he caused plaintiff to be transferred to Red Onion in retaliation to the complaints plaintiff filed against him at Wallens Ridge, the DHP, and the OIG;

2. Defendants violated plaintiff's First Amendment rights by conspiring together to transfer plaintiff to Red Onion in retaliation to the complaints filed against him at Wallens Ridge, the DHP, and the OIG

3. Defendants violated plaintiff's procedural due process rights by transferring him to Red Onion; and

4. Mullins violated plaintiff's Eighth Amendment rights by transferring plaintiff to Red Onion.

Mullins moves to dismiss under FED. R. CIV. P. 12(b)(6) on the grounds that plaintiff fails to state a claim for First Amendment retaliation because plaintiff did not engage in protected First Amendment activity and even if he did, there is no causal relationship between that activity and his transfer. Further, Mullins argues that plaintiff cannot state a conspiracy claim because there is no underlying First Amendment violation. Regarding Barnes' due process claims, Mullins argues that plaintiff has no protected liberty interest in avoiding transfer from one institution to another, the operating procedures at the Virginia Department of Corrections do not create any substantive rights, and Mullins was not involved in the lack of notice for plaintiff's hearing. Finally, Mullins argues that the Eighth Amendment claim should be dismissed because plaintiff has not alleged a serious medical need.

The other two defendants, Ely and Carico, also move to dismiss under FED. R. CIV. P. 12(b)(6). They argue that Barnes' Second Amended Complaint does not include specific allegations that would lead to the reasonable inference that they, along with Mullins, had the same conspiratorial objective to accomplish a common and unlawful plan to violate Barnes' federal rights. Also, plaintiff has not pleaded the elements of an underlying retaliation claim. Finally, defendants argue that Barnes does not have a liberty interest in avoiding retaliation, and even if he did, Barnes received all the process that was due to him in connection with his transfer to Red Onion.

## III. DISCUSSION

### A. <u>12(b)(6) Motion to Dismiss</u>

When analyzing a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the court must view all well-pleaded allegations in the light most favorable to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Even so, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. A plaintiff must "plausibly suggest an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

In addition, *pro se* plaintiffs are held to a "less stringent standard" than lawyers, and courts construe their pleadings liberally, no matter how "inartfully pleaded." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nonetheless, a *pro se* complaint must still meet the "minimum threshold of plausibility" under *Twombly* and *Iqbal*. *See Manigault v. Capital One, N.A.*, CIVIL NO. JKB-23-223, 2023 WL 3932319, at *2 (D. Md. June 8, 2023). While *pro se* complaints "represent the work of an untutored hand requiring special judicial solicitude," district courts are not required to "conjure up questions never squarely presented to them" or to "construct full blown claims from . . . fragments." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277–78 (4th Cir. 1985).

B. <u>Mullins' Motion to Dismiss</u>

    1.  First Amendment

To state a colorable First Amendment retaliation claim, a plaintiff must allege that (1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct. *Martin v. Duffy*, 977 F.3d 294, 299 (4th Cir. 2020). Mullins disputes that plaintiff can satisfy the first and the third elements of this analysis.

Filing grievances is an activity protected against retaliation under the First Amendment. *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017). Mullins argues that Barnes did not engage in any protected activities because he used his threats of and subsequent submission of complaints to try to induce Dr. Mullins to change his pain treatment. Dr. Mullins asserts that plaintiff does not have a constitutionally protected right to threaten and harass him. *See United States v. Nabaya*, No. 3:17cr3, 2017 WL 1424802, at *10 (E.D. Va. Apr. 19, 2017). At this stage, the court is required to draw all reasonable inferences in favor of the *pro se* plaintiff. The distinction between whether plaintiff was pursuing meritorious grievances in good faith or whether he was simply harassing Dr. Mullins is one that must be resolved in favor of the plaintiff at the pleading stage. Moreover, a prisoner has a First Amendment right to be free from retaliation for filing a grievance, even if the grievance proves to be without merit. "Prison officials cannot properly bring a disciplinary action against a prisoner for filing a grievance that is determined by those officials to be without merit anymore than they can properly bring a disciplinary action against a prisoner for filing a lawsuit that is judicially determined to be without merit." *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 541 (4th Cir. 2017) (citing *Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989)).

8

Mullins also argues that there was no causal relationship between the alleged protected activity and Barnes' transfer to Red Onion. Barnes alleges that he was transferred on September 1, 2021, more than a year after he filed an informal complaint with the prison on August 5, 2020. Thus, Mullins argues that plaintiff has not plausibly alleged causation because of this lack of temporal proximity. *See, e.g.*, *Pascual v. Lowe's Home Ctrs., Inc.*, 193 F. App'x 229, 233 (4th Cir. 2006) (finding that four months between protected activity and retaliatory action was too long to establish causation). In this case, however, Barnes has alleged that Mullins repeatedly expressed his wish that Barnes be transferred, right up until the point that Barnes *was* transferred. For example, while Barnes filed an informal complaint in August of 2020, Barnes met with Mullins on April 28, 2021, and Mullins told Barnes he did not understand why plaintiff had not been transferred and would talk with the Assistant Warden about the issue. On August 12, 2021, Mullins stated again when meeting with Barnes that he would speak with an administrator about initiating plaintiff's transfer to Red Onion, and the transfer happened soon after on September 1. The court finds that plaintiff has plausibly alleged causation.

Mullins has also argued that the August 5, 2020, grievance should not be considered a protected activity for purposes of a retaliation claim because Mullins' threat to retaliate by transferring Barnes was initiated before this grievance was filed. However, plaintiff had filed previous complaints against Mullins earlier in 2020 and in 2019. Then, in early August 2020, when Mullins refused to give Barnes additional treatment, plaintiff threatened to file more complaints, and Mullins responded by saying he would pursue having plaintiff transferred. When plaintiff followed-up with an informal complaint at Wallens Ridge, Mullins continued to express his desire to have Barnes transferred. With the foregoing as a factual backdrop, Barnes

9

has plausibly alleged both that he engaged in protected activity, and that there is a causal connection between his transfer and his protected activity.

For these reasons, the court declines to dismiss the First Amendment retaliation claim.

2. Conspiracy

To establish a conspiracy under 42 U.S.C. § 1983, "the plaintiff must show that the defendants 'acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in the deprivation of a constitutional right.'" *Barrett v. PAE Gov't Servs., Inc.*, 975 F.3d 416, 434 (4th Cir. 2020) (quoting *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996)). Mullins argues that Barnes cannot state a conspiracy claim based on his transfer because he cannot state a valid First Amendment retaliation claim. I have concluded that Barnes alleged a valid First Amendment retaliation claim and, thus, will deny the motion to dismiss the conspiracy claim against Mullins.

3. Due process

Barnes alleges that the "defendants," Mullins included, violated due process by transferring him to Red Onion. Because plaintiff has alleged a retaliatory transfer based on activity protected by the First Amendment, plaintiff cannot pursue a claim based on substantive due process. *See, e.g.*, *Foster v. United States Environmental Protection Agency*, Civil Action No. 2:14-cv-16744, 2016 WL 4473453, at *3 (S.D.W. Va. Aug. 22, 2016) ("It is the First Amendment, not the Fourteenth Amendment, that guards individuals against state-sponsored acts of . . . discrimination or retaliation.") (citing *Pagan v. Calderon*, 448 F.3d 16, 33–34 (1st Cir. 2006)); *Hoglan v. Mathena*, Case No. 7:18-cv-00140, 2022 WL 625086, at *10 (W.D. Va. Mar. 3, 2022) ("[T]he Fourth Circuit has recognized that inmates have a First Amendment right to file grievances and lawsuits against prison officials and that they are entitled to be free from

10

retaliation for the exercise of that right.  Because the First Amendment provides an explicit source of protection, Hoglan has no separate 'substantive due process' claim for alleged retaliation.").

To the extent that Barnes alleges a procedural due process violation, such a claim requires (1) a constitutionally cognizable life, liberty, or property interest, (2) a deprivation of that interest caused by some sort of state action, and (3) that the procedures employed were constitutionally inadequate.  *Todman v. Mayor & City Council of Balt.*, 631 F. Supp. 3d 314, 327 (D. Md. 2022).  Regarding the procedural aspect of this claim, plaintiff's primary complaint is that he was not allowed to participate in the hearing where Wallens Ridge officials decided to transfer him.  Barnes has also made various allegations about VDOC operating procedures that should have been followed.  Second Am. Compl. ¶¶ 21–27.  But plaintiff has not plausibly alleged that Mullins, an institutional physician, was involved in the alleged deprivation of any of these processes.  This is fatal to plaintiff's due process claim against Mullins because liability under § 1983 is personal, and a plaintiff must plead that each defendant, "through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.  Plaintiff argues that Mullins was involved because he caused his transfer, Dkt. No. 61, but the animating issue in this claim is the procedures afforded to Barnes, and Mullins did not deprive him of any procedures to which he may have been entitled.[1]

The court will therefore dismiss plaintiff's due process claim against Dr. Mullins.

4.  Eighth Amendment

Barnes alleges an Eighth Amendment claim that Dr. Mullins was deliberately indifferent to his serious medical needs when causing his transfer to Red Onion because Mullins knew that

---

[1] Additionally, the procedures afforded to plaintiff were constitutionally adequate, and the due process claim can be dismissed for this additional reason with respect to Dr. Mullins.

11

he experienced hallucinations when housed in segregation. Indeed, at Red Onion, Barnes went into segregation, experienced hallucinations daily, and suffered from anxiety from taunting by other inmates.

A prison official's deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment. *Gordon v. Schilling*, 937 F.3d 348, 356 (4th Cir. 2019). To establish an Eighth Amendment deliberate indifference claim, "the plaintiff is required to prove an objective component and a subjective component." *Id.* "The objective element requires an objectively serious medical condition." *Short v. Hartman*, 87 F.4th 593, 612 (4th Cir. 2023). A condition is objectively serious if it is "diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* The subjective component "requires that the prison official acted with deliberate indifference to inmate health or safety, meaning that the official had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Id.*

Accepting that Barnes's hallucinations and anxiety are objectively serious medical conditions, Barnes cannot satisfy the subjective component of a deliberate indifference claim. Dr. Mullins advised Barnes to seek medical attention if he developed hallucinations and anxiety, and in any event was not Barnes's doctor when they developed at Red Onion. For these reasons, the court will grant Dr. Mullins' motion to dismiss plaintiff's Eighth Amendment claim.

C. **Motion to Dismiss by Ely and Carico**

Ely and Carico move to dismiss the two claims brought against them: conspiracy to transfer plaintiff to Red Onion as retaliation for plaintiff's exercise of his First Amendment rights, and violation of procedural due process.

1. Conspiracy

"To establish a conspiracy under § 1983, a plaintiff bears the burden of showing that the defendants 'acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in the deprivation of a constitutional right.'" *Barrett v. PAE Gov't Servs., Inc.*, 975 F.3d 416, 434 (4th Cir. 2020) (quoting *Hinkle v. City of Clarksburg, W. Va.*, 81 F.3d 416, 421 (4th Cir. 1996)). To state a § 1983 conspiracy claim, "the factual allegations must plausibly allege *agreement*, rather than being merely *consistent* with agreement." *Id.* (emphasis in original). In other words, the plaintiff "must make specific allegations that reasonably lead to the inferences that members of the alleged conspiracy shared the same conspiratorial objective to try to 'accomplish a common and unlawful plan' to violate the plaintiff's federal rights." *Snodgrass v. Messer*, No. 7:16cv00050, 2017 WL 975992, at *3 (W.D. Va. Mar. 10, 2017) (quoting *Hinkle*, 81 F.3d at 421).

Defendants argue that the Second Amended Complaint does not include specific allegations from which it could be inferred that Carico, Ely, and Mullins shared the same conspiratorial objective to transfer plaintiff in violation of his constitutional rights. Merely "approving a transfer recommendation, without more, is insufficient to establish personal involvement in a conspiracy to transfer an inmate out of retaliation." *Allen v. Shelton*, No. 7:22-cv-00408, 2023 WL 6389807, at *6 (W.D. Va. Sept. 29, 2023). Even so, the court finds that plaintiff has plausibly alleged an agreement to transfer Barnes to Red Onion. For instance, plaintiff alleges that Ely told him, "We've been told to transfer you because you've been harassing Dr. Mullins." Second Am. Compl. ¶ 18. Ely stated that Mullins was irritated because of the prison grievances, and plaintiff "made things worse when he wrote letters to the DHP and OIG." *Id.* Ely told plaintiff that he "should not have written those letters." *Id.* Carico told

13

plaintiff that he was "aware of the issue" and stated that plaintiff had to be transferred because he was harassing Dr. Mullins. *Id.* ¶ 19. Taken together, these allegations plausibly suggest that Mullins, Carico, and Ely reached an agreement that plaintiff needed to be transferred to Red Onion in response to plaintiff's complaints against Mullins.

Defendants also argue that Barnes cannot establish a conspiracy claim without an underlying constitutional violation. Yet, Barnes has plausibly alleged that his transfer to Red Onion was in retaliation for grievances and complaints he filed that are protected First Amendment activities. For these reasons, the court will deny defendants' motion to dismiss plaintiff's conspiracy claim.

2. Due process

Plaintiff has also alleged a due process claim against Carico and Ely. The Fourth Circuit has held that Virginia inmates enjoy a protected liberty interest in avoiding transfer to Red Onion because "incarceration in a maximum-security 'environment is so atypical and significant that it would give rise to a liberty interest under any plausible baseline.'" *Shaw v. Foreman*, 59 F.4th 121, 127 (4th Cir. 2023) (quoting *Incumaa v. Stirling*, 791 F.3d 517, 530 (4th Cir. 2015)). The court finds it unnecessary to resolve whether plaintiff has plausibly alleged the deprivation of a protected liberty interest because Barnes was given adequate process.[2]

The Supreme Court has laid out three factors to be considered when determining whether the process provided was adequate: (1) "the private interest that will be affected by the official action;" (2) "the risk of erroneous deprivation of such interest through the procedures used, and the probative value, if any, of additional or substitute procedural safeguards;" and (3) "the

---

[2] In this regard, the court notes that Wallens Ridge is also a Level 5 facility, and it is doubtful that transfer between maximum security prisons gives rise to a liberty interest. *See Allen v. Shelton*, No. 7:22cv408, 2023 WL 6389807, at *1 (W.D. Va. Sept. 29, 2023) (noting security classification of Wallens Ridge).

14

Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976). "Due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). At a minimum, due process requires "fair notice and an opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews*, 424 U.S. at 333. As it pertains to convicted prisoners that are subjected to more restrictive conditions of confinement for administrative purposes, prison officials must provide a convicted prisoner with "some notice of the charges against him and an opportunity to present his views" to the deciding official. *Hewitt v. Helms*, 459 U.S. 460, 474 (1983).

Plaintiff's primary complaint is that he was not given advance notice of the ICA hearing prior to his transfer, and thus, he did not participate in the hearing. However, plaintiff was given notice of his impending transfer, and he presented arguments to Ely and Carico against being transferred to Red Onion. *See* Second Am. Compl. ¶¶ 18, 19. According to Barnes' allegations, Ely conducted the hearing and recommended that Barnes be transferred, and Carico reviewed and approved the transfer recommendation. Moreover, plaintiff was provided an ICA hearing less than 30 days upon his arrival at Red Onion. Barnes participated in the hearing and showed documents in support of his arguments against his transfer to Red Onion. *Id.* ¶¶ 38–43, Dkt. No. 50-1 at 27. Barnes then received an explanation for the denial of his request for a transfer out of Red Onion. *Id.* ¶ 45, Dkt. No. 50-1 at 28. Thus, Barnes received adequate due process. *See Williamson v. Stirling*, 912 F.3d 154, 176–77 (4th Cir. 2018) (finding that placement in administrative segregation or solitary confinement "requires that the prison officials provide a convicted prisoner 'some notice of the charges against him and an opportunity to present his

15

views' to the deciding official, although the opportunity may be provided after the fact") (quoting *Hewitt*, 459 U.S. at 474).

Plaintiff argues that the hearing he received after he was transferred to Red Onion was inadequate because at that point, it was not possible to be transferred due to the VDOC requirement that prisoners remain at Red Onion for at least a year before they can be transferred to a Security Level 4 prison. Second Am. Compl. ¶ 39. This is a questionable assertion because the ICA Committee initially approved plaintiff's transfer to a Level 4 facility. Dkt. No. 50-1 at 28 (recommending change from SL 5 to SL 4 and transfer to Keen Mountain, River North, Sussex I, or Sussex II). Moreover, "procedural due process does not require certain results—it requires only fair and adequate procedural protections." *Tri Cnty. Paving, Inc. v. Ashe Cnty.*, 281 F.3d 430, 436 (4th Cir. 2002). Regardless, plaintiff was also given notice and an opportunity to argue against his transfer to Red Onion prior to being transferred.

Accordingly, the court will grant defendants' motion to dismiss plaintiff's due process claim.

### III. CONCLUSION

Based on the foregoing, the court will issue an appropriate order that grants in part and denies in part the defendants' Motions to Dismiss.

Enter: June 30, 2025

/s/ Robert S. Ballou

Robert S. Ballou
United States District Judge